PRICE's Adm'r *vs.* TYSON's Adm'rs.—*June,* 1830.

Under the 11th section of the act of 1785, ch. 80, it is the duty of the Court to continue a cause standing under a rule of reference, until an award is returned. The death of both parties, while it remains under that rule, does not abate the action.

When the parties to a cause, standing under a rule of reference, die before an award returned, and there is ground to warrant the County Court in reinstating the cause upon the trial docket, the regular course is to move for its reinstatement in the name of the original parties; when that is ordered, their death should next be suggested, then their representatives summoned to appear, and upon their appearance, the cause proceeds as in other cases.

Where one of the arbitrators appointed under a rule of Court, had removed from the State, and many years had elapsed since his appointment, without an award being returned, the Court on motion reinstated the cause.

PER HARFORD COUNTY COURT.

APPEAL from *Harford* County Court.

This was an action of *Assumpsit,* brought in *Baltimore* County Court on the 16th of September, 1815, in the name of *John Price,* (the appellant's intestate,) against *Nathan Tyson,* (the appellee's intestate,) and on the suggestion, &c. of the defendant, was transferred to *Harford* County Court, to March term, 1817. At August term, 1817, the whole matter in dispute between the parties was by consent, referred to *Lemuel Taylor* and *Robert Barry,* in the usual manner. The cause was continued on the reference docket, until March term, 1823, when the defendant suggested the death of the plaintiff, and *William Price,* (the appellant,) appeared as administrator of the deceased, to prosecute of and upon the premises, &c. At August term, 1823, the plaintiff suggested the death of the defendant, and leave was given to issue a summons, to be directed to the executor or administrator of the defendant to appear, &c. This leave was again given at the next, and at the succeeding terms, until March term, 1825, when a summons issued to *Mary Tyson, Isaac Tyson,* and *Moses Sheppard,* the appellees, as administrators of *Nathan Tyson,* to appear, &c. at the next term. At August term, 1825, the appellees being summoned, appeared,

&c.   At March term, 1826, no award having been returned, and the cause having been still continued on the reference docket, the plaintiff prayed that the reference to the arbitrators might be stricken out, and the cause reinstated, suggesting in his petition, that *Lemuel Taylor*, one of the arbitrators, had long since removed from the State.   The Court struck out the reference, and reinstated the cause.   The plaintiff then filed his declaration containing sundry counts, charging that *Nathan Tyson*, in his life-time, to wit, on the 1st of June, 1815, was indebted to *John Price*, in his life-time, in the sum of $13,000, for the freight, hire and charter of a certain schooner or vessel called the *Eutaw*, whereof the said *John* was owner, for the performance of a voyage from the port of *Baltimore* to the island of *St. Bartholomews*, &c.   A rule was laid on the defendants to plead, for which purpose they imparled until the next term.   At the next term, (August, 1826) the defendants moved the Court to correct the docket entries, alleging that it appeared by those entries that the defendant appeared in Court at March term, 1823, and suggested the death of the plaintiff, when in fact the defendant was not alive at the time the said suggestion was made, and it was made by *John Scott*, esquire, who was counsel for the plaintiff, and made the suggestion at the special instance of the now plaintiff.   Affidavits were filed, stating that *Nathan Tyson* died before March term, 1823, of *Harford* County Court; that *John Scott*, esquire, informed the deponents, that the suggestion of the death of *John Price*, the original plaintiff, was made by him, acting on behalf of *William Price*, as administrator of the said *John*.   The Court refused to have the docket entries amended.   The defendants then pleaded, "that after this action was instituted, and while the same was pending, to wit, on the 15th of March, 1819, *Nathan Tyson*, the original defendant therein, died; and that afterwards, and before any suggestion of the death of the said *Nathan* was made to this Court, to wit, on the 14th of October, 1821, *John Price*, the original plaintiff herein, died; and this the

defendants are ready to verify. Wherefore they pray judgment of the writ and declaration aforesaid, and that the same may be quashed," &c. This plea was supported by affidavit. The plaintiff demurred to the plea, to which there was a joinder in demurrer. The County Court overruled the demurrer, and gave judgment for the defendants, with costs. From which judgment the plaintiff appealed to this Court.

The cause was argued before EARLE, MARTIN, and DORSEY, J.

*Gill*, for the appellant, contended, that the judgment of the County Court was erroneous under the true construction of the Act of 1785, *ch.* 80. That act in its first section provides, " That no action, brought, or to be brought, in any Court of law in this State, shall abate by the death o *either* of the parties to such action; but upon the death of any defendant, in a case where the action by such death, would have abated before this act, the action shall be continued, and the person interested on the part of the defendant, may appear," and in the case of a failure to appear, the plaintiff may issue summons for defendant, and enforce it by attachment. A similar provision also exists in relation to the plaintiff upon his death. It is also declared, that in case there be no appearance, or proceeding by either party in any case, before the 10th day of the second Court, after the death shall be suggested, then the action shall be struck off and discontinued.

An opinion has prevailed among the profession, that if both parties died before a suggestion of the death of either of them upon the record, the cause must abate. That idea is founded upon the technical notion that an actor must remain in Court, to suggest to the Court, the death of his opponent. No reason was assigned for this, except that the clerks had so made up their records from the passage of the law. The act in question is a highly remedial one. Its

great design was to prevent the abatement of suits, and to enable executors and administrators to prosecute and defend the causes of their deceased testators and intestates, at the very point at which their death left them. An object of this important, so just and reasonable in itself, should not be restricted by formal objections. Every reason which would induce the legislature to prevent the abatement of actions, and permit the representatives of deceased parties to appear, prosecute and defend, in regular succession, (and which it is not disputed, they may do as often as the contingency of a death and the appointment of a representative demand, provided such representative's appearance is entered upon the docket before the death of the opposing party, or his representative) applies with unabated force, and equal justice, to the more calamitous case of the death of both parties. The opinion therefore, so long prevalent, but which has never yet been sanctioned by this Court, cannot be correct. It opposes the first principle in the construction of remedial laws. Cases within the equity and spirit of such laws, and for which the legislature would unquestionably have provided to the letter, had they been anticipated, are to reap the benefit of the remedy, as extensively, as if they had been expressly mentioned. *People vs. Utica Insurance Company*, 15 *Johns*. 380. 6 *Bac. Ab. Stat.* 382, 387, 391, 392. 6 *Harr. and Johns*. 388. The judgment of the County Court cannot escape this objection, even if it should not be shewn, that a cause standing under a rule of reference is particularly provided for by the 11th section of the same act. That section enacts: " That all causes referred by consent of parties and rule of Court shall be continued until an award is returned, and if a death of *either* of the parties happen before an award returned, and judgment thereon, such cause shall not abate by the death, but upon reasonable notice to the person succeeding in interest, (and not being a minor,) the arbitrators shall proceed to a determination, and return their award, upon which, judgment may be entered by the Court, notwithstanding the death of the parties." If arbi-

trators die, refuse to act, or neglect to return an award, the Court may in its discretion, and upon motion, reinstate the cause, and take order to have it fairly tried.

The section in question has never been construed by this Court. In this case arbitrators were appointed by rule of Court in 1817. *Tyson* died in 1819. *Price* died in 1821. During the period from the reference to the death of *Price*, it is not denied that the cause was regularly continued. The act commands the Court to continue the cause until an award shall be returned. Upon the death of either party, the arbitrators may proceed upon notice to the representative. The Court aware that the cause is under a rule of reference, and no award being returned, have no duty to perform, but to continue it. The principles and the equity which would prevent the abatement of an action not referred, apply with equal force to a referred cause, so long as it remains before the arbitrators. The Court continue it to enable the parties to have the security of a judgment when the arbitrators conclude it. The parties have the power to prosecute their rights before the arbitrators; and the presumption is, and ought to be, when they or their representatives sleep upon their rights, require no active diligence of their arbitrators, permit the Court to continue the cause for a series of years without complaint or opposition, that both are satisfied, and remain under the expectation of ultimately having their rights determined by the parties of their own selection. This presumption is confirmed by the privilege of either party being authorised to require the Court to reinstate the cause for trial after a lapse of eight months, without an award. After that much delay, the dissatisfied party may move the Court for a hearing in the ordinary course of justice. Neither party adopted this course until 1823, when *Price's* representative suggested his intestate's death, and appeared for him, and then suggested *Tyson's* death, and summoned his representatives into the cause. Both parties were in Court at August, 1825 ; at the succeeding term, March, 1826, the plaintiff

Price *vs.* Tyson.—1830.

procured the cause to be reinstated; up to that term no complaints are heard of. A declaration was then filed, and an imparlance granted. It was after this imparlance and as the trial approached, the defendant discovered, that notwithstanding the command of the act of 1785, ch. 80, sec. 11, "to continue the cause until an award should be returned," that the action had abated by the death of both parties before a suggestion of the death of either on the docket. In this case, nothing is pleaded to rebut the presumption arising from a consideration of the legal rights of the parties, or the conduct of the principals, and their representatives. Why should the Court abate the action when the law directs its continuance? Why abate it when the silence of the parties towards the Court for years, remains unexplained? The law intended the parties should proceed under the reference, notwithstanding the death. To what rational cause can their silence be attributed, but the just expectation that the arbitrators would decide the controversy? If the arbitrators could not act, the parties knew that, or might have known it. There is no equity then in the plea of the defendants. The defendants should have taken a different course. If dissatisfied with the continuance of the cause, they should have moved the Court, as the plaintiff ultimately did, and forced the plaintiff to conclude the cause. To abate the action now, destroys the right. Limitations would bar the remedy. The attempt has been made to shew the Court, that the technical ground for the abatement of actions generally, assumed here, has no legal foundation. That in referred cases, it is in direct opposition to the words of the 11th section.

It is contended moreover, that this plea of abatement came too late. It was tendered after a general imparlance. The parties were both in Court, at August, 1825. At the succeeding Court, March, 1826, the cause was reinstated for trial, and continued under a rule to plead, and a general imparlance. This was without any saving to the defendant, any exception to the writ or to the jurisdiction. 1 *Chit. Plea.* 307. It is true the party who pleads in abate-

ment here, is not mentioned in the writ.   The summons to appear is the writ as to him, and if he intended to plead in abatement to that summons, he should have demanded a special imparlance at August, 1825, or March, 1826.   After the entry of general imparlance, the defendant may plead in bar of the action, but not in abatement, or to the jurisdiction.   1 *Chit. Plea.* 308.   1 *Tidd,* 418.   *Stev. on Plea.* 90, 91, 93, 393.   *Bank of Somerset vs. Whittington,* 5 *Harr. and Johns.* 490.   1 *Bacon,* 26, 27.   This plea of abatement came too late.

*Gwynn,* for the appellees.

He contended, that the cause abated by the death of both parties. The representatives of neither being in Court, there was no authorised party to suggest the death, nor to move for a summons.   That this difficulty was caused by negligence of the plaintiff, who was the surviving party. He said that at Common Law, when there was but a single plaintiff, or a single defendant in the cause, upon the death of either, the action abated.   This defect had been but partially remedied by the Act of 1785, *ch.* 80.   When the surviving party could get in his opponent's representative, and make him a party to the cause, the action did not abate. Diligence to that extent was indispensable.   It could be repeated as often as the nature of the case required, but the rule, which required one party in Court, was inflexible, and had never been departed from in practice, since the passage of the Act of 1785.   That the plea therefore which disclosed the death of both parties, before any suggestion of the death of the party first dying, and no appearance of his representative as above required, abated the action.   He contended, if such was not the law, that causes affecting the estates of deceased parties, might be indefinitely continued. He maintained that the plea being filed at the next term after the re-instatement of the cause, was filed at the ordinary imparlance term, during which pleas of abatement were usually received.   That this plea therefore was in time.

He cited 3 *Saun.* 209. *b. no.* 6 *Harr. and Johns.* 388. Act of 1788, *ch.* 80, *sec.* 11.

EARLE, J. delivered the opinion of the Court.

*Harford* County Court decided this case against the plaintiff below, on a general demurrer to a plea in abatement, and, in our opinion, decided it erroneously. The Court went upon the ground, that both the plaintiff and defendant being dead, at the time of the suggestion, parties could not be made under the Act of 1785, *ch.* 80.

We think the parties were properly made, notwithstanding this circumstance, although the time of making them was not strictly regular. The cause stood in the name of *John Price,* against *Nathan Tyson,* and had been referred by consent of parties, and rule of Court, and long continued on the reference docket, waiting the return of the award, before the first suggestion was made. It was made at March term, 1823, while the case was still depending on the reference docket of the Court, and this is the irregularity which we should not have sanctioned. The 11th section of the act is positive, that a case referred, shall be continued, until an award is returned and a suggestion that might have led to a discontinuance of this suit, and which actually led to making new parties to it, was' out of time, and should not have been allowed. The case ought to have been reinstated in the name of the original parties, and the suggestion of the defendant's death, then made by the administrator of the plaintiff.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.